IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00242-MEH

ANDREA HAMMOND,

    Plaintiff,

v.

INTERVENTION and its subsidiary I.C.C.S., Intervention Community Correction Services,
GREG KILDOW, CEO,
ALL THE BOARD MEMBERS OF INTERVENTION, and
GERI ANNA ECHLENBERG, Case Manager at ICCS,

    Defendants.

___

# ORDER ON MOTION TO DISMISS
___

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is an Amended 12(b)(6) Motion to Dismiss filed by Defendants Intervention and its subsidiary, ICCS ("Intervention Community Correction Services "), Greg Kildow, CEO, All the Board Members of Intervention, and Geri Anna Echlenberg [filed August 24, 2014; docket #50]. Although provided the opportunity to do so, the Plaintiff did not respond to the motion. The Court concludes oral argument would not materially assist the Court in its adjudication of the motion. For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** the Defendants' motion.

## BACKGROUND

Plaintiff, proceeding *pro se*, initiated this action on January 28, 2014 against Intervention Community Correction Services ("ICCS"), Greg Kildow, CEO, All the Board of Directors of ICCS, and Geri Anna Echlenberg, Case Manager at ICCS (collectively "Defendants"). Docket #1.

Pursuant to a court order during initial review, Plaintiff subsequently filed an Amended Prisoner Complaint on February 26, 2014 and a Second Amended Complaint on March 24, 2014. Dockets ##11, 14. Defendants responded by filing a motion to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on June 6, 2014. Docket #33. Plaintiff filed a response to the motion on June 20, 2014 (docket #35), and Defendants filed a reply in support of their motion on July 3, 2014 (docket #36). The Court held a Scheduling Conference in this case on July 14, 2014 and three days later, Plaintiff filed a motion to amend her pleading again. Dockets ##37, 40.

After directing the Plaintiff to properly file a motion and a proposed amended pleading, the Court granted Plaintiff's motion, accepted her Third Amended Complaint re-naming the Defendants as set forth in the caption above, and denied without prejudice the Defendants' pending motion to dismiss. Dockets ## 48, 49. Plaintiff's operative claims against Defendants include: Claim 1, violation of the Eighth Amendment to the U.S. Constitution; Claim 2, violation of the Fourteenth Amendment to the U.S. Constitution; Claim 3, Duress; and Claim 4, violation of the Americans With Disabilities Act ("ADA"). Third Amended Prisoner Complaint, Docket #49.

The operative complaint seeks: (1) payment of Plaintiff's hospital bills approximating $800.00; and (2) $50,000 in punitive damages for the alleged constitutional and statutory violations. *Id.* at 9. In support of these requests, Plaintiff alleges she has asthma and is severely allergic to cigarette smoke. She was moved to ICCS in August 2013 and placed in a room with five cigarette smokers. *Id*. at 3. Plaintiff claims Defendants refused to permit her to seek medical help and refill her rescue inhaler, denied her a prescribed Epi-Pen and, one night, denied all of her medication. *Id.* at 4. She asserts she had two severe asthma attacks: one during which she passed out from lack of oxygen, but Defendants would not call an ambulance; and one after which her rescue inhaler ran out

and she was transported to the hospital for nebulizer treatments. *Id.* She alleges Defendants failed to enforce the "no smoking" rules and allowed inmates to smoke in the bathrooms next to Plaintiff's room. *Id.* Plaintiff also claims that Defendants refused to accommodate her "70% back disability" and forced her to perform chores requiring heavy lifting and prolonged standing. *Id.* Finally, Plaintiff alleges she was forced under threat of punishment to sign intake forms without having the opportunity to read them; the forms were later "used against her in court." *Id.*

As set forth above, the day Plaintiff's rescue inhaler ran out, she had a severe asthma attack. During the attack, ICCS staff members joked saying, "should we make her walk to the bus or call an ambulance?" *Id.* at 5. The thought of walking to the bus caused Plaintiff to have a panic attack in the middle of her asthma attack. *Id.* At the hospital, the doctor noted (in writing) that Plaintiff should reside in a smoke-free environment. *Id.* at 6. Plaintiff was placed in a non-smoking room for three days, but then transferred into a room with two inmates who used tobacco products. *Id.* The only place Plaintiff could get outside was the back porch at which smoking was allowed; often, the porch door was held open allowing smoke into the living room and laundry room. *Id.* Plaintiff states that "[s]moke smell permeated the entire building." *Id.*

Plaintiff alleges that, upon entering ICCS, she was presented a packet of intake paperwork to sign. *Id.* Because of her restraints, she could not see the content of the documents; however, staff ordered her to sign them under threat of punishment. *Id.* Plaintiff requested copies of the documents but ICCS would not provide them to her. *Id.* Plaintiff claims the documents were "later illegally used in a court of law against" her. *Id.*

Plaintiff also alleges she suffers from back pain and has been diagnosed as 70% disabled and given physical restrictions. *Id.* at 7. Her restrictions include no lifting over 15 pounds and no

3

standing more than 20 minutes. *Id.* Plaintiff's was assigned to "kitchen duty" at ICCS, which required her to lift 50-pound bags of cookie mix and other heavy items, to stand longer than five hours, and to drag a heavy vacuum cleaner up two flights of stairs. *Id.* She informed Ms. Echlenberg and other ICCS staff of her restrictions and was told under threat of punishment that she had to do that chores. *Id.* Plaintiff claims she was also denied reasonable accommodation in the form of a non-smoking room. *Id.*

Defendants responded to the Third Amended Complaint by filing the present motion arguing the Plaintiff's claims should be dismissed for failure to state a claim because: there is no specific injury identified as a result of the asthma attack; no cruel and unusual punishment occurred; Plaintiff alleges no deprivation of life or serious bodily injury for her Fourteenth Amendment claim; Plaintiff alleges no damages or injury for signing the intake documents; ICCS is not an employer for purposes of the ADA and Plaintiff failed to exhaust the required administrative remedies; and "All the Board Members of Intervention" have been neither personally named nor served in this case.

## LEGAL STANDARDS

### I. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare

4

assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## II.    Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the

proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*

## ANALYSIS

**I.     Claim 1: Eighth Amendment Violations**

Defendants argue that the conditions of Plaintiff's confinement were not sufficiently serious to rise to the objective level of deliberate indifference to her health or safety. They further contend that there is no indication of any injury suffered as a result of the asthma attack. Lastly, Defendants allege there are not enough facts to show that ICCS staff were deliberately indifferent to Plaintiff's medical needs.[1] The Plaintiff did not respond.

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

---

[1]The Court notes that Defendants refer to several allegations denoted by quotation marks, which do not actually appear in the Third Amended Complaint (*i.e.*, August 30 refusal of medicine [Motion, docket #50 at 6] and Plaintiff was "moved again" with a roommate that smoked "a pack a day" [*id.* at 7]); accordingly, the Court will disregard the arguments concerning such references.

Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component of a "deliberate indifference to a prisoner's serious illness or injury" claim is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), *overruled on other grounds by Robbins v. Okla.*, 519 F.3d 1242 (10th Cir. 2008)). The Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (quoting *Sealock v. State of Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"To establish a cognizable Eighth Amendment claim for failure to protect, a plaintiff 'must show that he is incarcerated under conditions posing a substantial risk of serious harm,' the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Verdicia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003) (quoting *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001)). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura*, 461 F.3d at 1291).

The subjective component of both "conditions" and "illness or injury" claims is met if the Plaintiff demonstrates Defendants "knew [s]he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment."

*Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)). "A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755. However, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Id.* at 751 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)). Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

For Claim 1, Plaintiff alleges that she suffers severe asthma and is "allergic" to cigarette smoke. She claims she suffered two asthma attacks at ICCS, one during which she passed out from a lack of oxygen and the other for which she was hospitalized and treated. Taken as true, the Court finds Plaintiff's identified medical need constitutes a sufficiently serious condition "that has been diagnosed by a physician as mandating treatment." *See Sealock*, 218 F.3d at 1209.

In addition, the Plaintiff must allege facts demonstrating deliberate indifference to her health, such as when a prison official knew he faced a substantial risk of harm and disregarded that risk. The Tenth Circuit has held that prevention of needed medical treatment would be considered deliberate indifference and evidence of a culpable state of mind. *See Self*, 439 F.3d at 1231. According to Plaintiff, she "was very vocal orally and in writing that she could not be around tobacco smoke," she suffered two asthma attacks while at ICCS from her allergy to cigarette smoke, the staff was involved in both instances, and the second resulted in a hospital stay; taken as true,

these allegations demonstrate the Defendants' knowledge of a risk to serious harm.

Further, Plaintiff alleges prison staff refused to call an ambulance after she lost consciousness as a result of the first asthma attack. During her second asthma attack, Plaintiff alleges that when she asked for help, prison staff joked saying, "should we make her walk to the bus or call an ambulance?" She also alleges her second asthma attack occurred after Ms. Echlenberg refused her request to see a doctor and get a refill for her expired inhaler. The Court finds these allegations, taken as true, are sufficient to state a "serious illness or injury" clam.

For her "conditions" claim, Plaintiff alleges Defendants refused to accommodate her request for a non-smoking room and placed her in a room with five smokers; then, after placement in a non-smoking room for three days upon a doctor's order, she was placed again in a room "with two inmates who used tobacco products." The Court finds these allegations, taken as true, are sufficient to state a "conditions" claim.

In sum, the Plaintiff has sufficiently alleged facts supporting viable Eighth Amendment claims. Accordingly, the Court **denies** the Defendants' motion to dismiss Claim 1 alleging Eighth Amendment violations.

## II.     Claim 2: Fourteenth Amendment Violations

Defendants contend that Plaintiff fails to state a Fourteenth Amendment claim because her allegations do not demonstrate that Defendants "stand[ ] in the shoes of the State of Colorado" nor that "her exposure to second hand smoke was so severe that she suffered deprivation of her life or serious bodily injury." Although Defendants assert that Intervention is a "Colorado nonprofit corporation," they do not explain further how or why they were not "acting under color of state law" with respect to Plaintiff's incarceration in August 2013.

In any event, the Due Process Clause of the Fourteenth Amendment guarantees due process only when a person is to be deprived of life, liberty, or property. U.S. Const. amend. XIV, § 1. The Due Process Clause "shields from arbitrary or capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty interests.'" *Harper v. Young*, 64 F.3d 563, 564 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997). Thus, when an inmate alleges a violation of his due process rights, the court must first determine whether a liberty interest exists. Liberty interests protected by the Fourteenth Amendment may arise either from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466 (1983), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

Here, Plaintiff alleges she "has a right to live free from toxic chemicals (which nicotine, [sic] and tobacco are) but this right was denied to her by virtue of the ICCS staff not allowing [Plaintiff] to live in a non smoking room." The Court construes Plaintiff's allegations as claiming a substantive due process violation of a protected liberty right.

Generally, "[t]o show a deprivation of a protected interest ... in violation of substantive due process protection, a plaintiff must demonstrate that the government officials acted in a manner 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Deray v. City of Colo. Springs, Colo.*, No. 11-cv-02639-MSK-CBS, 2012 WL 1901220, at *6 (D. Colo. May 25, 2012) (quoting *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1101 (10th Cir. 2009)). "'The 'ultimate' standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges .'" *Id.* (quoting *Graves v. Thomas*, 450 F.3d 1215, 1220 (10th Cir. 2006)). "To satisfy this standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury

to the plaintiff by abusing or misusing government power. Instead, a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Livsey v. Salt Lake Cnty.*, 275 F.3d 952, 957-58 (10th Cir. 2001) (quoting *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998)).

The Fourteenth Amendment does not "impose an affirmative obligation on the State to ensure that" its citizens are not deprived of life, liberty, or property without "due process of law." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). However, the state does have an affirmative duty to protect these interests when it "restrain[s] the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty." *Id.* at 200. Based on this exception, a state may have an affirmative duty towards a citizen under either the "special relationship doctrine" or a "danger creation" theory. *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995); *see also DeShaney*, 489 U.S. at 199-200 ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.").

"A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual." *Uhlrig*, 64 F.3d at 572. "If the state restrains an individual's freedom to act to protect himself or herself through a restraint on that individual's personal liberty, the state may thereby enter into a 'special relationship' during such restraint to protect that individual from violent acts inflicted by others." *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1261 (10th Cir. 1998). A pretrial detention forms such a relationship (*see Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999)) and there is no indication nor argument in this case that Plaintiff's residence at ICCS was not a detention or restraint. However, the special

relationship doctrine, like the danger creation theory, is only applicable to "private act[s] of violence by a third party." *Moore v. Guthrie*, 438 F.3d 1036, 1042 (10th Cir. 2006) (holding the state was not responsible under either a danger creation theory or under the special relationship with its employee when he was injured by a fellow police officer); *see also Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 918 n.6 (10th Cir. 2012) (noting the danger creation exception more broadly includes private violence rather than merely third party violence); *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 (10th Cir. 2002) ("Under the 'special relationship' exception, liability may attach to a state actor for the violence of a third party if the state restrained the plaintiff's personal liberty and that restraint hindered the plaintiff's freedom to act to protect himself from the third party") (citing *Armijo*, 159 F.3d at 1261).

Likewise, to state a claim under the danger creation theory, a plaintiff must establish that: "(1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience." *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1251 (10th Cir. 2008).

Although this point was not raised by Defendants, the Plaintiff's allegations make clear that she was harmed by the Defendants, not by a third party. Thus, neither the special relationship doctrine nor the danger creation theory is applicable as these exceptions are relevant only when the state fails to protect a plaintiff from the actions of a third party when the plaintiff is in a special relationship with the state or when the state creates a danger to the plaintiff. *See Moore*, 438 F.3d

at 1042 (stating the danger creation theory was inapplicable where police officer was injured by fellow police officer); *Ruiz*, 299 F.3d at 1178, 1185 (allowing, but ultimately denying, claim against state defendants for violation of special relationship doctrine and danger creation theory when private day care service severely injured appellant's child); *Uhlrig*, 64 F.3d at 571 (stating "the conduct complained of in the instant case was committed by a private third party ... rather than by a state actor, Plaintiff must demonstrate either (1) the existence of a special custodial relationship between the plaintiff and the state; or (2) that the state recklessly created the danger that caused the constitutional violation."); *Armijo*, 159 F.3d at 1262–64 (denying grant of summary judgment under danger creation theory after appellant's son committed a private act of violence by committing suicide after being taken home by school officials).

Moreover, Defendants are not liable under either the special relationship doctrine or a theory of danger creation because Plaintiff has not alleged conduct that "shocks the conscience." *See Moore*, 438 F.3d at 1042 (holding "even if either the danger creation or special relationship theory were applicable, it would not relieve Plaintiff of his duty to allege actions that shock the conscience."). In this case, Plaintiff has failed to establish that the Defendants' conduct was conscience shocking, a general requirement for a violation of a special relationship and danger creation doctrines. Conscience shocking conduct involves "deliberately wrongful government decisions rather than merely negligent government conduct ." *Uhlrig*, 64 F.3d at 573. "[I]ll-advised, inappropriate, or ill-considered" actions taken by the state does not "shock the conscience of federal judges." *Livsey*, 275 F.3d at 958. "*[D]eliberate* decisions of government officials to deprive a person of life, liberty, or property," such as stomach pumping, paddling a student, and intentionally destroying an inmate's property, have been found to shock the conscience.

*Moore*, 438 F.3d at 1040 (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)) (emphasis in original).

Here, Plaintiff does not accuse Defendants of taking any deliberate action to harm her, but rather of failing to provide her with medical assistance and to place her in a non-smoking room. Because these allegations, at best, suggest only that Defendants inappropriately failed to accommodate Plaintiff's medical limitations and/or provide Plaintiff with medical attention, Plaintiff has not alleged conscience-shocking conduct in this case.

Therefore, Plaintiff fails to state a claim for violation of the Fourteenth Amendment under the special relationship doctrine and the danger creation theory, and the Court **grants** Defendants' motion to dismiss Claim 2 for violation of the Fourteenth Amendment.

## III.     Claim 3: Duress

Defendants argue that Plaintiff fails to state a claim because she does not allege that she suffered any damages from signing the documents[2] at intake to ICCS, and "does not ask for any remedy in relation to her Claim Three." Defendants further assert "it is likely that plaintiff had to sign the documents presented to her for her to be a resident at ICCS." Accordingly, Defendants contend that ruling whether Plaintiff signed the documents at ICCS became moot "by her own actions" when she "escaped" from the facility on August 30, 2014.

First, the Court rejects the Defendants' mootness argument as improper under Rule 12(b)(6); the Defendants raise factual issues that are likely disputed by the Plaintiff and, thus, are not properly

---

[2] Again, Defendants are incorrect in referring to Plaintiff's allegation concerning this claim as, "she refers to [the documents] as 'contracts'" when, in fact, Plaintiff refers to the documents only as "documents"; the word, "contracts," does not appear in the pleading. *See* Third Amended Complaint, docket #49 at 6.

considered in the present motion to dismiss. However, the Court agrees that Plaintiff fails to state a claim for duress here.

According to Fed. R. Civ. P. 8(a)(2) every claim for relief must contain: "a short and plain statement of the claim showing that the pleader is entitled to relief." It also must contain "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P 8(a)(3).

In Colorado, "duress," in the civil context, is an affirmative defense to a breach of contract claim. *See* CJI 4th, 30:20; *see also Vail/Arrowhead, Inc. v. Dist. Court for the Fifth Judicial Dist.*, 954 P.2d 608, 612 (Colo. 1998) (stating the elements for economic duress). Under that defense, a defendant is not legally responsible to the plaintiff for a breach of contract if the defendant proves defendant was not acting of his or her own free will and the plaintiff caused defendant's lack of free will. *Id.* For economic duress, a contract may be voidable if a party's manifestation of assent is induced by an improper threat that leaves no reasonable alternative. *Vail/Arrowhead, Inc.*, 954 P.2d at 612.

Plaintiff alleges that she was forced to sign the intake documents, which she was not allowed to review, under a threat of punishment, and the intake documents "were later illegally used in a court of law against" her. Even liberally construed, the allegations do not state the defense of duress and, even if a "claim" for duress existed, Plaintiff's statement of harm is vague and the Plaintiff fails to seek any form of relief for the claim.

Accordingly, the Court finds that Plaintiff meets her burden under Rule 8 to state a claim for relief and the Court **grants** Defendants' motion to dismiss Plaintiff's Claim 3 for Duress.

**IV.     Claim 4: Violation of the Americans with Disabilities Act (ADA)**

Defendants argue that the ADA claim should be dismissed because Defendants are not considered employers and the Plaintiff is not an employee under the ADA's definitions. Defendants also advocate for dismissal because the Plaintiff does not allege that she filed the jurisdictionally required Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and received authorization from the EEOC to sue.

Typically, a court must address jurisdictional issues at the outset; thus, the Court will begin with Defendant's contention that Plaintiff has failed to allege she exhausted administrative remedies for her ADA claim. Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under the ADA. *Jones v. UPS, Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007). The first step to exhausting an ADA claim is filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). *Id.* (citing *Jones v. Runyon*, 91 F.3d 1398, 1399 n.1 (10th Cir.1996) (noting that, although a *timely* filing is not jurisdictional in nature, the filing itself is a jurisdictional requirement)). "A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) (citation omitted).

Here, although the Plaintiff alleges that she exhausted the administrative remedies available at the institution at which she is confined (grievance process), there is no allegation that the Plaintiff filed a charge of discrimination for her ADA claim or otherwise exhausted administrative remedies required with the EEOC. Moreover, the Plaintiff has failed to respond to the present motion and, even in her response to the previous motion, Plaintiff did not address this issue concerning the exhaustion of her ADA claim. *See* docket #35 at 7-8.

Accordingly, the Court must conclude that it lacks jurisdiction to hear Plaintiff's ADA claim, and therefore **grants** Defendants' motion to dismiss Claim 4 for violations of the ADA.

## V.     Defendant "All the Board Members of Intervention"

Defendants argue that Plaintiff has failed to name and serve the individual board members of Intervention and, thus, her claims against them should be dismissed. Construing the pleading liberally as I must, I conclude that Plaintiff's characterization of "All the Board Members of Intervention" may be construed simply as Intervention's "Board of Directors" (or "Board" by another name). To the extent that Intervention has such a "Board," and without argument or explanation from Defendants suggesting the Board is not a "person" pursuant to 42 U.S.C. § 1983, the Court finds Plaintiff's Eighth Amendment allegations sufficient to state a claim against Intervention's "Board." *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694-95 (1978); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 736-38 (1989); *Ware v. Unified Sch. Dist. No. 492*, 902 F.2d 815, 819 (10th Cir. 1990).

## CONCLUSION

The present motion argues the Plaintiffs' four claims for relief should be dismissed for failure to state claims pursuant to Fed. R. Civ. P. 12(b)(6). The Court concludes that the Third Amended Prisoner Complaint contains sufficient allegations to support Plaintiff's Eighth Amendment claims set forth in Claim 1 against all Defendants. However, Plaintiff has failed to allege sufficient facts to support a Fourteenth Amendment substantive due process claim and failed to allege she complied with the ADA's exhaustion requirements demonstrating she has authorization to sue Defendants. Finally, Plaintiff's allegations do not comply with Fed. R. Civ. P. 8(a) in stating a claim for "duress."

Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** the Amended

12(b)(6) Motion to Dismiss filed by Defendants Intervention and its subsidiary, ICCS ("Intervention Community Correction Services "), Greg Kildow, CEO, All the Board Members of Intervention, and Geri Anna Echlenberg [filed August 24, 2014; docket #50]. Plaintiff's Claim 1 for violations of the Eighth Amendment shall proceed in this case; Claims 2 and 3 are dismissed with prejudice for Plaintiff's failure to state claims for relief;[3] and Claim 4 is dismissed without prejudice for this Court's lack of jurisdiction.

DATED this 30th day of September, 2014, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

[3]Typically, dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)). As such, in this jurisdiction, a court typically does not dismiss a claim under Rule 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon*, 935 F.2d at 1109-10. In this case, the Court finds the Plaintiff has had sufficient opportunities to cure the deficiencies in this case, particularly where the Defendants have raised many of the same arguments as those set forth in their initial motion to dismiss to which the Plaintiff responded, then filed the operative Third Amended Complaint.